**SULLIVAN–WALDRON PRODUCTS COMPANY, Plaintiff-Appellant,**

v.

**INDIANA LIMESTONE COMPANY, Inc., Defendant-Appellee.**

**No. 11004.**

United States Court of Appeals Seventh Circuit.

Oct. 15, 1954.

Eugene M. Fife, Jr., Indianapolis, Ind., William K. Bachelder, Chicago, Ill., for appellant.

Alan W. Boyd and Herbert E. Wilson, Indianapolis, Ind., Jerry P. Belknap, Indianapolis, Ind., for defendant-appellee, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, Sullivan-Waldron Products Company, brought this action for breach of a contract whereby defendant undertook, for a stated consideration, to manufacture for plaintiff 200,000 "Whipsters", semi-mechanical devices for whipping cream. The complaint averred that defendant sub-contracted with the Stone City Machine & Tool Company, hereinafter referred to as Stone City, to do the actual manufacture; that because of faulty manufacture, the finished products failed to conform to the contractual specifications; and that, by reason of these allegedly faulty products reaching the market, and ultimately the consumer, plaintiff's market for them was ruined, causing it extensive losses in repairs of defective products, restitution of purchase price to customers and waste of its extensive investment in advertising and other promotional schemes on behalf of the device.

Defendant answered, admitting execution of the contract in suit and the sub-contract with Stone City, but denying all allegations of any breach on its part. Defendant also filed a counterclaim based on the contract for an amount allegedly due and unpaid to defendant for devices manufactured by it and delivered to plaintiff's order pursuant to the contractual terms.

The cause was referred to a special master, who, after hearing the testimony and receiving voluminous documentary evidence, entered findings of fact and conclusions of law favorable to defendant on both the complaint and counterclaim. The District Court rejected the master's report in part, and, as thus modified, adopted it as the basis for judgment in favor of defendant from which plaintiff takes this appeal. Plaintiff's position on appeal can be best understood after narration of pertinent contents of the master's report.

In his conclusions of law, the master adopted an erroneous theory of liability, namely, that a condition in the contract that defendant "replace without charge all defective parts, which are due to faulty workmanship or materials" limited plaintiff's right to recover to the reasonable cost to it of replacing such defective parts, and that defendant's liability was contingent upon a showing by plaintiff that it had made such a demand which had been refused. This theory was embodied in the master's Conclusion of Law Number 1. Conclusion Number 2 applied the same conception to preclude plaintiff's recovery of certain special damages claimed. These conclusions were ultimately rejected by the trial court as erroneous.

Notwithstanding his determination, however, the master entered findings of fact addressed to the true issues raised by the pleadings. The contractual re-

lationship between the parties and that between defendant and Stone City were found to be as previously stated. Pursuant thereto, retooling of Stone City's plant for Whipster production was completed and ten initial models were manufactured and shipped to plaintiff for its inspection, by early September, 1946. Plaintiff submitted to defendant numerous criticisms of the models, based on inspection conducted by plaintiff's agent, Northwest Research. Although many of the objections were based on claimed structural defects and departures from the contractual specifications, several were addressed to defects in design requiring changes in plaintiff's specifications. Numerous changes were made in Stone City's tooling and manufacturing procedures in order to eliminate or alleviate these objectionable features. In September, 1946, at plaintiff's request, Northwest sent one Burns to Stone City's plant located in Bedford, Indiana, to oversee the entire Whipster program. Burns remained at Bedford in that capacity, first as a representative of Northwest and later as an employee of plaintiff, throughout the period of time pertinent to this cause.

Shortly after Burns' arrival at the plant, actual production of the device was begun in late September, 1946. During all pertinent times, Burns was the active overseer for all manufacturing and shipping operations connected with Whipster production. The devices and all component parts thereof were subjected to strict inspection by inspectors employed by defendant and Stone City. Burns established all final inspection procedures and the standards of acceptability of the completed devices. As manufacturing progressed, many difficulties of the type usually associated with initial production of any new product were encountered, and changes in design and manufacturing procedures were worked out by Burns and representatives of defendant in attempts to eliminate these undesirable factors as they presented themselves from time to time.

The devices manufactured and passed through final inspection substantially complied with plaintiff's drawings and specifications. Relative to this, plaintiff employed a special inspection crew, under Burns' supervision, which worked from January, 1947, to the end of March, 1947, inspecting all Whipsters warehoused at defendant's plant and consigned to plaintiff, and more than 20,000 units were accepted and set aside for plaintiff's account. Also, more than 51,-000 were sold to plaintiff's customers without complaint being made. From these last related facts, the master inferred that such Whipsters were, in fact, accepted by plaintiff as substantially complying with its specifications.

However, from the outset of plaintiff's sales program, devices were returned to plaintiff from time to time on its customers' claims that they would not operate. Inspection of some of these revealed that the fault lay with the inability of the customer to make practical use of the device. In other cases inspection showed that the operating difficulty lay in design defects. A large proportion of the returned products were never inspected by plaintiff or anyone else to determine whether there had been substantial compliance with specifications. Inspection for operability revealed that, in many such cases, the fault lay with improper cleaning of the device after use, rendering it thereafter inoperable. Many cartons of Whipsters returned had never been opened by the retailers.

Defendant manufactured and billed to plaintiff under the contract 145,854 units. Payment was made by plaintiff for some 32,000 only, leaving a net total due to defendant of more than $294,000. Because of this default, defendant terminated further production under the contract on February 5, 1947. Manufacture was never resumed. The foregoing is a summary of the pertinent findings of the Special Master.

On plaintiff's objection to the report, the court, as previously noted, rejected the master's conclusions as to the limited theory of liability as error. The master's findings and remaining conclusions were adopted as the findings and conclusions of the court. Plaintiff contends

that we may not accord the usual weight on appeal to these findings,—that the master's adoption of, and trial of the cause on, an erroneous theory of liability so affected his rulings on the admissibility of evidence and the weight accorded by him to the conflicting evidence that a judgment based on such findings is clearly erroneous and cannot stand, irrespective of action taken by the court below to cure the error. Two bases are advanced to support this contention, namely, that the language of the master in his reserved ruling on admissibility of evidence numbered XLIII, considered in the light of his erroneous theory of the case, reveals conclusively that he ignored plaintiff's evidence in entering his findings, and, secondly, that the findings entered by the master are relevant only to the issues raised by the pleadings and wholly irrelevant to the erroneous issue which the master conceived to be the true one.

In his reserved ruling number XLIII the master said, *inter alia*: "Much of the evidence both through the medium of the testmony of witnesses and the introduction of exhibits in the within cause was irrelevant to the issues material in this case, and some evidence allowed to remain is harmless error. In this connection all of the deposition taken * * * at the request of plaintiff herein, is admitted, which includes the depositions of A. Allen Coe and H. P. Benedict, together with its exhibits * * * and all objections made to questions asked in said deposition are hereby overruled."

The depositions to which reference is made are those of an engineer and a tool and die maker who had examined a number of Whipsters in comparison with the specifications for their manufacture. These depositions tended to show, by both the transcribed testimony and exhibits attached thereto, that deponents had found a failure of compliance with specifications and defects of manufacture in practically every Whipster examined.

This evidence was certainly probative, and the characterization of its admission as harmless error was improper. The master's report, however, is not the final legal action before us for review. We cannot ignore the intervening action of the District Court, absent clear record proof that the error committed by the master is such that its correction by the trial court without a complete new trial is wholly precluded. On the record before us, such proof is conclusively refuted.

■ In its order, the trial court stated, *inter alia*: "Wherefore, it is ordered that the special master's report be confirmed and approved, except Conclusions of Law Number 1 and 2, and his findings and conclusions of law, subject to the said exception, are hereby adopted as the findings and conclusions of this Court. Based upon the whole record, the Court concludes as a matter of law that defendant did not breach the contract sued upon as alleged * * * but on the contrary defendant performed and complied with the terms thereof. It is further concluded that defendant was excused from further performance of the contract by the plaintiff's * * * failure to make payment of sums due and owing to defendant thereunder." Thus the record discloses that the court adopted the master's findings of fact on the basis of its independent review of the entire record. Such findings are entitled to the usual weight on review. We may not interfere unless they are clearly erroneous. Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

We have examined the transcript of oral testimony as well as the exhibit evidence on which plaintiff places principal reliance to support its position. The evidence, both testimonial and documentary, is conflicting. The master and the court below resolved that conflict in favor of defendant; we may not interfere with that determination.

Assuming that we might in a proper case go behind the action of a trial court and strike down the report of a master, notwithstanding a purported correction of error therein by the trial court, we may not do so in a case such as this in which the record conclusively shows that

the judgment before us is the result of an independent review by the court of the whole record made in the proceedings before the special master. We need not consider further this question except to note that the authorities cited by plaintiff are not persuasive of the existence of power in this court to take the action which it requests. Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 207 F.2d 912, certiorari denied 347 U.S. 953, 74 S.Ct. 678, and Carter Oil Co. v. McQuigg, 7 Cir., 112 F.2d 275, are authority for the proposition that a trial court may reject findings of a master which are not based on questions of credibility or are clearly erroneous, but they shed little light on the question which plaintiff seeks to raise.

We have previously denied plaintiff's motion to waive printing of the transcript of testimony and for leave to proceed in this Court on the typewritten transcript. In view of the necessity of examining the testimony, this former order is vacated. Our conclusions are based upon a careful examination of all the evidence.

The judgment is
Affirmed.